IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| HARLEY HOWARD, | CV 20-00039-H-BMM-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| ANNETTE CARTER, RENEE BAUER, KRISTINA LUCERO, DARRELL BELL, COLLEEN AMBROSE, ROBERT LISHMAN, and LORRAINE SCHNEIDER | |
| Defendants. | |

Plaintiff Harley Howard has filed a Motion to Proceed in Forma Pauperis (Doc. 1) and a proposed Complaint seeking injunctive relief against members of the Montana Board of Pardons and Parole (BOPP) and legal counsel for the Montana Department of Corrections regarding the procedures used in his parole hearing. The Court will grant the motion to proceed in forma pauperis but recommends that this matter be dismissed for failure to state a federal claim.

## I.  MOTION TO PROCEED IN FORMA PAUPERIS

Pursuant to 28 U.S.C. § 1915(b)(1), Mr. Howard must pay the statutory.00 filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will allow Mr. Howard to proceed with his case and pay in monthly installments. Mr. Howard submitted an account statement showing average monthly deposits of $191.71 for the six-

1

month period of October 19, 2019 through April 20, 2020.  Therefore, an initial

partial filing fee of $38.34 will be assessed by this Order.  28 U.S.C. §

1915(b)(1)(B) (allowing an assessment in the amount of 20% of the prisoner's

average monthly deposits).  A separate order will direct the agency having custody

of Mr. Howard to collect the initial partial filing fee from Mr. Howard's account

and forward it to the Clerk of Court.

Thereafter, Mr. Howard must make monthly payments of 20% of the

preceding month's income credited to his prison trust account.  The percentage is

set by Congress and cannot be altered.  28 U.S.C. § 1915(b)(2).  A separate order

will direct the agency having custody of Mr. Howard to forward payments from his

account to the Clerk of Court each time the account balance exceeds $10.00, until

the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

## II.  STATEMENT OF THE CASE

### A.  Factual Allegations

On January 5, 2020, Mr. Howard sent a request to Defendant Carter

requesting to view and/or receive a copy of his parole guideline score used to

"score" his parole eligibility pursuant to Montana statutes.  On February 5, 2020,

Carter responded that the Board was using the form, but it had not yet been

published in the Administrative Rules of Montana.  Mr. Howard alleges, however,

that as early as July, 2017, Carter was working with Council of State Governments

Director Derrick Bree to finalize the Guidelines Point Scoring System.  He requested the same information from Department of Corrections Chief Legal Counsel Colleen Ambrose, but she responded that only the parole board and its staff are responsible for developing the parole guidelines as directed in state statutes.  He claims, however, that Defendants Ambrose, Schneider, Lishman, and Lucero were acting as designated legal counsel assigned the task of developing the Parole Guidelines for amendment into the Boards Administrative Rules as required by the Montana Administrative Procedure Act.

On February 28, 2020, Mr. Howard attended his parole hearing.  Defendants Carter, Bauer, and Lucero presided over the hearing.  Mr. Howard attempted to ask questions and submit views regarding the Parole Guidelines and his score. Defendant Carter again refused to allow him to view his Guideline score sheet and other documents used by the Board to determine his parole eligibility.  He claims Defendant Carter also refused to allow him to ask the Board any questions and as a result he was not able to verify or refute the accuracy of his Parole Guideline Score or effectively participate in his hearing.

Mr. Howard claims Carter treated him differently than other similarly situated state prisoners because she provided Inmate John Miller a copy of the Guideline Score Sheet and a copy of Miller's actual score sheet used at Miller February 2018 parole hearing.  He claims Carter also allowed Miller and other

prisoners the opportunity to submit views and ask questions at their hearings.

**B. Claims**

In Count 1, Mr. Howard claims that Defendants Carter, Bauer, and Lucero violated his constitutional right to fair and equal treatment under the state open records statutes and treated him differently from Inmate Miller.

In Count 2, Mr. Howard alleges Defendants Carter, Bauer, and Lucero violated his constitutional right to due process notice protections mandated in state statutes by secretly using a parole guideline scoring system to evaluate his release eligibility without providing him notice prior to his February 28, 2020 hearing.

In Count 3, Mr. Howard alleges Defendants Carter, Bauer, and Lucero violated his constitutional right to the procedural and due process protections mandated in the state parole board administrative rules.  He claims Defendants violated his minimum amount of constitutionally required due process pursuant to *Greenholtz v. Inmates of the Nebraska Penal and Correction* Complex, 442 U.S. 1, 15-16 (1979) which requires a written statement that "informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances."  He claims that Defendants refused to allow him to examine his parole score sheet so he could ensure it was accurate pursuant to *Greenholtz*.  He alleges Defendants failed to deliver to him a written statement informing him how he fell short of qualifying for parole.

In Count 4, Mr. Howard alleges Defendants Carter, Bauer, and Lucero violated his constitutional right to due process mandated by state statutes when they secretly used an illegally adopted numeric scoring system to decide his parole eligibility without affording him notice.  He claims he has a liberty interest in verifying the correctness of his parole score sheet.

In Count 5, Mr. Howard argues Defendants Carter, Bauer, and Lucero violated his constitutional right to fair and equal treatment under state administrative procedure statutes when in August 2017 they began utilizing a new parole point scoring system to evaluate state prisoners for release.  He claims therefore he was treated differently than all state prisoners who had parole hearings prior to August 2017.  He contends those prisoners had the benefit of proper notice of all board rules and procedures used to conduct their parole hearings and could effectively participate in their own hearings.

In Count 6, Mr. Howard alleges civil conspiracy under 42 U.S.C. § 1983. He contends Defendants Carter, Bauer, Lucero, Bell, and Newman acted in concert with Defendants Ambrose, Lishman, and Schneider to deprive him of his constitutional right to equal protection and due process under Montana law.

## III.  SCREENING STANDARD

Mr. Howard is a prisoner proceeding in forma pauperis so the Court must review his Complaint under 28 U.S.C. § 1915 and § 1915A.  Sections 1915A(b)

and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "A case is malicious if it was filed with the intention or desire to harm another."  *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005).  A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  That is, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

There is a two-step procedure to determine whether a complaint's allegations cross that line. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662. First, the Court must identify "the allegations in the complaint that are not entitled

6

to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680.  Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim.  *Id.* at 679, 681.  A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability.  *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief.  *Iqbal*, 556 U.S. at 679.  A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679 (citation omitted).  If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — 'that the pleader is entitled to relief.'"  *Id. citing* Fed.R.Civ.P. 8(a)(2).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf*. Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

## IV.  SCREENING ANALYSIS

### A.  Violations of State Law

In Counts 1-5 of his Complaint, Mr. Howard alleges violations of due process and equal protection under Montana statutory law.  In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) a violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  Section 1983 limits a federal court's analysis to the deprivation of rights secured by the federal "Constitution and laws."  42 U.S.C. § 1983.  A violation of state law may form the basis for a Section 1983 action but only when that violation causes the deprivation of a right protected by the United States Constitution.  *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) *citing Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482 n. 22 (9th Cir. 1993) *cert. denied*, 510 U.S. 991 (1993). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  *Lovell*, 90 F.3d at 370.  The United States Supreme Court has long recognized that a "mere error of state law" is not a denial of due process.  *Engle v. Isaac*, 456 U.S. 107, 121 n. 21 (1982).

Whether the Parole Board followed state law or its own procedures is an

issue of state law.  Mr. Howard may not "transform a state-law issue into a federal one merely by asserting a violation of due process."  *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (citations omitted).  Mr. Howard's allegations that his parole hearing violated Montana statutes or the mandates of the operational procedures for the Parole Board does not state a cognizable federal claim for violation of due process.

Because as set forth below, Mr. Howard has failed to state a federal claim for relief, the Court should decline to exercise supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367 (providing that in a civil action in which a district court has original jurisdiction, there is supplemental jurisdiction over claims that are part of the same case or controversy); *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has dismissed all claims over which it has original jurisdiction." (internal quotation marks and citations omitted)); *see also Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) ("When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction."). To the extent Mr. Howard seeks to bring state law claims, he must do so by filing an action in state court.

### B.  Civil Conspiracy

In Count 6, Mr. Howard alleges Defendants conspired to deprive him of his constitutional rights under Montana law.  A conspiracy under 42 U.S.C. § 1983 is "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449, n. 6 (10th Cir. 1990).  In the context of conspiracy claims brought pursuant to section 1983, a complaint must allege facts to support the existence of a conspiracy among the defendants. *Buckey v. Cty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992).  A plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. *Sykes v. California*, 497 F.2d 197, 200 (9th Cir. 1974).

Conspiracy allegations must be more than mere conclusory statements. *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1979) ("[M]ore than vague conclusory allegations are required to state a [conspiracy] claim [under section 1983]").  "To establish a conspiracy, a plaintiff must demonstrate the existence of an agreement or 'meeting of the minds' to violate constitutional rights." *Mendocino Environmental Center v. Mendocino Cty.*, 192 F.3d 1283, 1301 (9th Cir. 1999).  "The defendants must have, by some concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming another which results in damage." *Id*.  The agreement need not be overt and may be inferred on

the basis of circumstantial evidence, such as a showing that the alleged conspirators committed acts unlikely to have been undertaken without an agreement. *Id*. "[A] conclusory allegation of agreement at some unidentified point does not supply adequate facts to show illegality." *Twombly*, 550 U.S. at 557. A plaintiff must plead "enough factual matter (taken as true) to suggest that an agreement was made." *Id*. at 556.

Mr. Howard does not allege sufficiently specific facts in support of his allegations that Defendants conspired to deprive him of his civil rights. The Complaint does not contain any factual allegations showing an agreement or "meeting of the minds" between the defendants to deprive Mr. Howard of his of their civil rights. *See Iqbal*, 556 U.S. at 676 (requirement that plaintiff allege facts showing plausible claim for relief "asks for more than a sheer possibility that a defendant has acted unlawfully"; complaint pleading "facts that are 'merely consistent with' a defendant's liability...'stops short of the line between possibility and plausibility of 'entitlement to relief' ' ") (citation omitted). There are no facts supporting how a conspiracy was formed or explaining how Mr. Howard's injuries resulted from a conspiracy. Instead, Mr. Howard provide little more than a "mere allegation of conspiracy without factual specificity." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Mr. Howard's broad allegations that Defendants conspired with each other are insufficient.

Most importantly, however, is that in order to "recover under a [section] 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also a deprivation of federal rights; pleading and proof of one without the other will be insufficient." *Dixon*, 898 F.2d at 1449, n. 6. The "essence of a [section] 1983 claim is the deprivation of the right rather than the conspiracy" and the conspiracy is not itself a constitutional tort under section 1983. *Dixon*, 898 F.2d at 1449; *Lacey v. Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012). A section 1983 conspiracy theory does not enlarge the nature of the claims asserted by a plaintiff, as there must always be an underlying constitutional violation. *Lacey*, 693 F.3d at 935.

Here, Mr. Howard has not alleged a separate federal constitutional violation and it does not appear that he can do so. Mr. Howard cannot challenge the actual denial of his parole because Section 1983 claims based on parole determinations are categorically barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) unless and until the determination is overturned via writ of habeas corpus. *Butterfield v. Bail*, 120 F.3d 1023, 1024–25 (9th Cir. 1997) (*citing Elliott v. United States*, 572 F.2d 238, 239 (9th Cir. 1978)). If, however, Mr. Howard only seeks a hearing free from constitutional infirmity, and not a favorable decision, i.e., not any relief that will necessarily affect the length of his confinement (as it appears in this case), he may bring the claim under § 1983 as opposed to habeas corpus. *See Wilkinson v.*

12

*Dotson*, 544 U.S. 74, 82 (2005).  But even if that is all Mr. Howard is trying to do in this case, he has failed to state such a claim.

To establish a constitutional due process claim under 42 U.S.C. § 1983 a plaintiff must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (*citing Parratt v. Taylor*, 451 U.S. 527, 537 (1981)).  In the absence of such a constitutionally protected interest, the Constitution does not require the provision of any process.  *See Board of Regents v. Roth*, 408 U.S. 564, 569 (1971); *Erickson v. United States*, 67 F.3d 858, 861 (9th Cir. 1995).

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. U.S. 1, 7 (1979).  In *Allen v. Board of Pardons*, 792 F.2d 1404 (9th Cir. 1986) affirmed 482 U.S. 369 (1987), the United States Supreme Court held that the Montana parole statute created a protected liberty interest.  But the Montana Legislature amended that statute in 1989 and the Montana Supreme Court has therefore held that inmates who committed offenses after 1989 have no liberty interest in parole and inmates who committed their crimes prior to 1989 are entitled to due process protections.  *Worden v. Mont. Bd. of Pardons & Parole*, 962 P. 2d 1157, 1165 (Mont. 1998).

13

Mr. Howard committed his offense in 2003 and therefore has no liberty interest in parole. He thus has no basis for a federal procedural due process claim.

Similarly, Mr. Howard has failed to allege a federal equal protection claim. The equal protection clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985); *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). To state a claim, plaintiffs must show that defendants intentionally discriminated against them based on their membership in a protected class, *Hartmann*, 707 F.3d at 1123, *Furnace*, 705 F.3d at 1030, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005), *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Department of Agr.*, 553 U.S. 591, 601-02 (2008), *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008), *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Mr. Howard contends he has been treated differently from inmates who had parole hearings prior to 2017. But to the extent that there was a difference in treatment, it was a function of a change in policy rather than an intent to

discriminate.  Further, the mere fact that Mr. Miller received a copy of the Parole

Guideline Score form after filing a lawsuit in state court and Mr. Howard did not is

insufficient to establish an equal protection claim.

Based upon the foregoing, the Court issues the following:

### ORDER

1.  Mr. Howard's Motion to Proceed in Forma Pauperis (Doc. 1) is

GRANTED.

2.  The Clerk shall edit the text of the docket entry for the Complaint (Doc.

2) to remove the word "LODGED."  The Complaint is deemed filed on April 23,

2020.

Further, the Court issues the following:

### RECOMMENDATIONS

1.  Mr. Howard's claims brought pursuant to 42 U.S.C. § 1983 should be

DISMISSED and the Court should decline to exercise jurisdiction over Mr.

Howard's state law claims.  This matter should therefore be DISMISSED and the

Clerk of Court should be directed to close this matter and enter judgment pursuant

to Rule 58 of the Federal Rules of Civil Procedure.

2.  The Clerk of Court should be directed to have the docket reflect that the

Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate

Procedure that any appeal of this decision would not be taken in good faith.

15

3.  The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) because Mr. Howard's allegations fail to state a claim.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Howard may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[1]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 11th day of August, 2020.

_/s/ John Johnston_____
John Johnston
United States Magistrate Judge

---

[1]Mr. Howard shall have an additional three days after this period would otherwise expire.